FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y ★ SEP 28 2015 ★
★ SEP 28 2015 ★
LONG ISLAND OFFICE

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
SEP 28 2015
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,
          Plaintiff,

– against –

INTERCONTINENTAL
CAPITAL GROUP, INC., DUSTIN DIMISA,
AND RICHARD STEINBERG
          Defendants.

STIPULATION AND
ORDER OF SETTLEMENT

Civil Action No. 2015-5581
(Feuerstein, J.)
(Locke, M.J.)

## PARTIES

This Stipulation and Order of Settlement ("Agreement") is between the United States of America, acting through the United States Department of Justice ("DOJ"), and the United States Attorney's Office for the Eastern District of New York (collectively, the "United States"), and Dustin DiMisa ("DiMisa"), Richard Steinberg ("Steinberg"), and Intercontinental Capital Group, Inc., ("ICG"). The United States, DiMisa, Steinberg and ICG are referred to collectively in this Agreement as the "Parties."

## RECITALS

WHEREAS, the United States commenced this action against DiMisa, Steinberg and ICG (the "ICG Defendants"), by filing a complaint in this Court (the "Complaint"); and

WHEREAS, the Complaint, whose allegations are incorporated by reference herein, alleges claims for relief against the ICG Defendants pursuant to the Financial Institutions Recovery, Reform, and Enforcement Act, 12 U.S.C. § 1833a, based on certain information and documentation the ICG Defendants caused to be transmitted to the United States and certain financial institutions, and certain payments that ICG made to, and through, the Rainy Day

Foundation in 2008 and 2009, which payments the United States contends artificially suppressed ICG's mortgage loan comparative delinquency and default ratios as reported to HUD (the "Covered Conduct"); and

WHEREAS, the Complaint does not allege that ICG engaged in the improper origination or underwriting of any loan; and

WHEREAS, to avoid the delay, uncertainty, inconvenience and the expense of protracted litigation of these claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties reach a full and final settlement as set forth below; and

WHEREAS the ICG Defendants admit, acknowledge, and accept responsibility for the following conduct alleged in the Government's Complaint:

(a) At all times relevant to the Complaint, ICG was a Direct Endorsement Lender in the Federal Housing Administration's mortgage insurance program. Steinberg was ICG's chief executive officer. DiMisa was ICG's president and managing director.

(b) HUD tracks the delinquency and default ratios of FHA-insured mortgages for Direct Endorsement lenders through its Neighborhood Watch System ("Neighborhood Watch"). HUD uses Neighborhood Watch to monitor Direct Endorsement Lender compliance with HUD's underwriting and origination regulations. FHA requires prompt and accurate reporting by Direct Endorsement Lenders of all early payment defaults.

(c) In eleven instances, from October, 2008 until April, 2009, when mortgage borrowers with loans originated or refinanced by ICG could not make a payment within the first two years of their loan's issuance, and were either delinquent, about to enter into default, or actually in default, ICG transferred funds to the Rainy Day Foundation. At the ICG Defendants' direction, the Rainy Day Foundation then paid the borrowers' mortgages. The payments prevented the borrowers' delinquency or defaults at that time, and therefore resulted in an alteration of ICG's overall delinquency and default ratios as reported to HUD in Neighborhood Watch.

(d) As a result of such payments by the Rainy Day Foundation, individual borrowers, and any secondary purchasers, may have been delayed in taking advantage of HUD's comprehensive Loss Mitigation program, which offers multiple remedies to cure borrower delinquencies and defaults.

The Parties hereby agree as follows:

## TERMS AND CONDITIONS

1. This Agreement shall become effective upon being "So Ordered" by the Court (the "Effective Date").

2. The ICG Defendants agree to pay the United States a total of four hundred twenty-four thousand, eight hundred and fifty-nine dollars and zero cents ($424,859.00) (the "Settlement Amount"). The ICG Defendants shall pay the Settlement Amount by electronic funds transfer, pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of New York, as follows:

   (a) Within seven days of the Effective Date, ICG will pay the United States one-hundred and twenty-four thousand, eight hundred and fifty-nine dollars and zero cents ($124,859.00);

   (b) Within six months of the Effective Date, ICG will pay the United States seventy-five thousand dollars and zero cents ($75,000.00);

   (c) Within twelve months of the Effective Date, ICG will pay the United States seventy-five thousand dollars and zero cents ($75,000.00);

   (d) Within eighteen months of the Effective Date, ICG will pay the United States seventy-five thousand dollars and zero cents ($75,000.00); and

   (e) Within twenty-four months of the Effective Date, ICG will pay the United States seventy-five thousand dollars and zero cents ($75,000.00).

The ICG Defendants shall be jointly and severally liable for the payments set forth in this paragraph 2.

3. The ICG Defendants shall each sign a consent judgment in the form attached hereto as Exhibit A (the "Consent Judgment"), acknowledging that they (a) are indebted to the United States, jointly and severally, in the amount of $424,859.00; (b) have no defense, counterclaim or offset, as of the Effective Date, to the debt created by this Agreement, except to

the extent that a portion of the Settlement Amount shall have been paid, in which event the ICG Defendants shall have an offset in the amount of the payments made as of the date, if any, of the Court's so-ordering of the Consent Judgment; and (c) confess judgment to the United States as a result of their failure to pay a debt owed to the United States. The United States shall hold this Consent Judgment in escrow and not submit the same to any court to be "so ordered" provided that (a) the ICG Defendants make payments in accordance with the schedule of payments set forth in paragraph 2 above, or (b) any default by the ICG Defendants in making these payments in accordance with the schedule of payments set forth in paragraph 2 above is not cured in accordance with paragraph 4 below.

4. In the event of a default by the ICG Defendants in making the payments in accordance with the schedule set forth in paragraph 2 above, and such default remains uncured for 14 days after notice sent to the ICG Defendants in the manner provided in this paragraph, the United States shall have the right, at its sole option and discretion, to submit the Consent Judgment to any court to be "so ordered," and to declare due and owing the entire amount of the confessed judgment, in the amount of $424,859.00, less any amounts paid towards the Settlement Amount by the ICG Defendants to the United States before any such default, plus any interest until fully and finally paid. The United States shall give written notice of such default, and of its declaration of the same, by certified mail return receipt requested, to each of the ICG Defendants and to their undersigned counsel, and also shall provide counsel with an email copy of any notice of default. The ICG Defendants shall have 14 days from the date of mailing the notice of default in which to cure such default. In the event the default remains uncured after the expiration of the 14-day period from the date of mailing of the notice, the United States shall have the right of execution upon the Consent Judgment for the entire $424,859.00, plus interest running from the

Effective Date (less any amounts paid towards the Settlement Amount by the ICG Defendants to the United States), until fully and finally paid.

5. Subject to paragraph 6 below (concerning excluded claims), the United States, on behalf of itself and its officers, agencies, and departments, releases ICG and all of its current and former officers (including, but not limited to, Steinberg and DiMisa), directors, employees, agents, affiliates, and assigns from any civil or administrative monetary claim of any type (including but not limited to claims for attorney's fees, costs, and expenses of every kind and however denominated), that the United States has or may have for the Covered Conduct under any statute, regulation or the common law, including but not limited to the False Claims Act, 31 U.S.C. §§ 3729-3733, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, the Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. §1833a, and the common law claims of gross negligence, breach of fiduciary duty, indemnification, and unjust enrichment.

6. Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person are the following claims of the United States:

   (a) Any liability arising under Title 26, U.S. Code (Internal Revenue Code);
   (b) Except as expressly stated herein, any administrative liability;
   (c) Any criminal liability;
   (d) Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct described above;
   (e) Any claims based upon such obligations as are created by this Agreement; and
   (f) Any administrative claims by the United States Department of Housing and Urban Development concerning the covered conduct.

7. The ICG Defendants finally and fully release the United States, its agencies (excluding HUD), employees, servants, and agents from any claims (including claims for

attorney's fees, costs, and expenses of every kind and however denominated) that the ICG Defendants have asserted, could have asserted, or may assert in the future against the United States, and its agencies (excluding HUD), employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

8. Nothing in this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9. Upon receipt of the initial payment described in Paragraph 2(a) above, the United States shall, within five business days of receipt sign and file in this action a Notice of Dismissal, pursuant to Federal Rules of Civil Procedure 41. Despite the terms or filing of any stipulation of dismissal, the Court shall retain jurisdiction over this Agreement and the Parties to enforce the obligations of each party under this Agreement. Each of the Parties shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

10. The ICG Defendants represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

11. This Agreement is governed by the laws of the United States. The Parties agree that exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement is in the United States District Court for the Eastern District of New York.

12. For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties and shall not, therefore, be construed against any single party for that reason in any subsequent dispute.

13. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

14. The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the entities indicated below.

15. This Agreement may be executed in separate counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

16. Facsimiles of signatures and scanned or other electronic signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

IN WITNESS WHEREOF, the parties hereto affix their signatures and consent to entry of the foregoing.

**UNITED STATES OF AMERICA**

KELLY T. CURRIE
Acting United States
Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

September 28, 2015      By: _____
EDWARD K. NEWMAN
JOHN VAGELATOS
ROBERT SCHUMACHER
Assistant United States Attorneys

## INTERCONTINENTAL CAPITAL GROUP

BUCKLEY SANDLER LLP

September 25, 2015  By: _____
ANDREW W. SCHILLING
ROSS E. MORRISON
1133 Avenue of the Americas, Suite 3100
New York, New York 10036
aschilling@buckleysandler.com
rmorrison@buckleysandler.com
Attorneys for Intercontinental Capital Group

September 25, 2015  By: _____
RICHARD STEINBERG

September 25, 2015  By: _____
DUSTIN DIMISA
President
Intercontinental Capital Group

DATED: Central Islip, New York
September 28, 2015

**SO ORDERED,**

s/ Sandra J. Feuerstein
_____
The Honorable
United States District Judge